UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GHAZI AHMED,

    Plaintiff,

Case No. 08-13358

v.

Hon. John Corbett O'Meara

L & W ENGINEERING,

    Defendant.

_____/

**OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendant's motion for summary judgment, filed May 21, 2009. Plaintiff submitted a response brief on June 19, 2009; Defendant filed a reply on July 2, 2009. The court heard oral argument on August 20, 2009, and took the matter under advisement. For the reasons stated below, Defendant's motion is granted.

**BACKGROUND FACTS**

Plaintiff alleges that he was discriminated against based upon his national origin (Yemeni) and religion (Muslim) when he was laid off from his job at L & W Engineering in November 2007. Plaintiff was hired by L&W in December 1997 as a press operator in the stamping department at L&W's Plant One. He was later promoted to the position of Quality

Technician. Plaintiff's direct supervisor was Maria Daniela Pascu. Pascu reported to the Plant One Quality Manager, Rich Decook.

L&W operates several plants in Michigan that produce automobile parts. L&W instituted the first of several layoffs in the fall of 2007. William Zoli, the Director of Associate Services, developed the process to determine who would be laid off. At an October 18, 2007 meeting, Zoli had managers complete an evaluation form for each employee, regardless of position. The evaluation form asked managers to rate employees on a scale of one through ten in six categories: (1) displays a positive attitude toward work and toward others; (2) consistent at producing quality work; (3) works well in a team environment; (4) follows safety rules; (5) consistently meets production requirements; and (6) demonstrates a strong work ethic. Zoli averaged each employee's score by totaling the scores and dividing by the number of evaluators. He subtracted any attendance occurrences and disciplines in the previous 12 months and calculated a final score. Employees were then ranked on a plant-wide basis, based on each employee's final score. Employees who scored in the bottom third – scores of 35.4 and below – were later selected for layoff. Both Pascu and Decook testified, however, that they did not know the purpose of the evaluations at the time they completed them.

Independent of each other, Pascu and Decook each gave Plaintiff a score of 29; Plaintiff's score was reduced to 27 after attendance was taken into account. Plaintiff's score placed him in the bottom third and he was selected for layoff by Zoli, Plant One General Manager Angelo Katakis, and Steve Schaefer, L&W's Chief Operations Manager. At a meeting on November 5, 2007, Plaintiff was informed by Decook and Dominic Cespino, the Associate Services employee

assigned to Plant One, that he was being let go. L & W laid off another 25 employees at the same time. Plaintiff's position has not been filled.

Plaintiff was one of four Quality Technicians. Phil Ford, received a score of 48.5, placing him in the top third. The remaining two, Vicki Baxter and Frances Mathis, received scores of 39 and 38.5, respectively; they were each in the middle third. Plaintiff does not challenge the decision to retain Ford and Baxter but claims that the decision to lay him off instead of Mathis was based on discrimination.

Plaintiff reports two comments made by a Sean Eaton, a Quality Engineer at Plant One, prior to the layoffs. Eaton was a non-management employee and did not supervise Plaintiff. On July 26, 2007, Eaton allegedly told Plaintiff he should not be sent to a customer because he looked "like a terrorist." Plaintiff alleges that Decook was in the room at the time; Decook smiled and looked in the air when the comment was made. On September 13, 2007, Plaintiff and a co-worker from Yemen were discussing the co-worker's recent trip overseas and his return flight on September 11. Eaton interjected, "what are you guys thinking, flying on 9-11?" Decook was present with this second comment was made.

## LAW AND ANALYSIS

**I.     Legal Standard**

Title VII prohibits discrimination in employment based on national origin or religion. 42 U.S.C. § 2000 e-2. Where the evidence of discrimination is circumstantial, the Plaintiff bears the initial burden of establishing a prima facie case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A plaintiff establishes a prima facie case by showing "(1) membership in the protected class; (2) that [he] suffered adverse employment action; (3) that [he] was otherwise

- 3 -

qualified for the position; and (4) following the plaintiff's rejection, the position was filled by a person outside of the protected class." *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996). If, however, a plaintiff was discharged as a result of a reduction in force, the fourth factor is modified so that the plaintiff must "present additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 371 (6th Cir. 1999) (*quoted in McFarland v. Century Truss Co.*, 518 F.Supp.2d 977, 981 (E.D. Mich. 2007)).

"If the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (internal citations omitted). "It is important to note that the defendant need not *prove* a nondiscriminatory reason . . ., but need merely *articulate* a valid rationale." *Hartsel*, 87 F.3d at 800 (emphasis in original).

If the defendant provides a legitimate, nondiscriminatory reason, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253 (internal citations omitted). "To make a submissible case on the credibility of his employer's explanation, the plaintiff is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate his discharge, or (3) that they were *insufficient* to motivate discharge." *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). To show that an employer's offered reasons did not actually motivate rejection but were only a pretext, "the plaintiff may not rely simply upon his prima facie evidence." *Id*. at 1084.

## II.     Plaintiff's Prima Facie Case

A plaintiff establishes a prima facie case by showing "(1) membership in the protected class; (2) that [he] suffered adverse employment action; (3) that [he] was otherwise qualified for the position" (*Hartsel*, 87 F.3d at 800) and must also show "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons" (*Godfredson*, 173 F.3d at 371).

It is undisputed that Plaintiff satisfies the first three factors. With respect to the fourth factor, Plaintiff argues that he must have been singled out because none of the three Quality Technicians retained after the reduction in force were Muslim or from Yemen.

Arguably, however, Plaintiff has not met this fourth element because he has not shown that either Muslims or Yemenites were laid off in disproportionate numbers in Plant One as a whole; only two out of twenty-six of those laid off were members of Plaintiff's protected class. Whether this element is met is immaterial, however , because Plaintiff cannot demonstrate pretext, as discussed below.

## III.    Defendant Has Articulated a Legitimate, Nondiscriminatory Reason

Defendant has articulated a legitimate, nondiscriminatory reason for its actions. Defendant conducted a reduction-in-force in response to economic pressures. L&W laid off all employees whose evaluations placed them in the bottom third. Because Plaintiff's evaluation was in the bottom third, Plaintiff was laid-off.

Pascu gave Plaintiff lower scores based on several factors. She received numerous reports from Don Yaquinto, the afternoon supervisor, that Plaintiff would not appear when paged

or would be on the phone. Pascu was also dissatisfied with the paper work he turned into her on a daily basis; it was either incomplete or Pascu had to request that Plaintiff turn it in the first place.

Similarly, Decook received several reports from Yaquinto that Plaintiff was not to be found. Decook had also heard from Pascu that Plaintiff was not completing his tasks.

### IV.     Plaintiff Has Failed to Show Pretext

To show that an employer's offered reasons did not actually motivate the employer's actions but were only a pretext, a plaintiff must attempt "to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant. . . [i]n order to make this type of rebuttal showing, the plaintiff may not rely simply upon his prima facie evidence."  *Manzer*, 29 F.3d at 1084.

Plaintiff argues that Pascu and Decook must have given him low scores out of a discriminatory animus and that Defendant's proffered reason for laying off Plaintiff was therefore a pretext because (1) Defendant failed to follow its own layoff policy; (2) Decook failed to stop Eaton from making disparaging comments about Plaintiff's religion and national origin; (3) Defendant has not presented particularized facts to support the choice of Plaintiff for layoff; (4) Plaintiff was better qualified than Mathis, who kept her job; (5) Decook favored Mathis over Plaintiff in the past; and (6) Decook isolated Plaintiff. None of these arguments suggest by a preponderance of the evidence that Pascu and Decook scored Plaintiff poorly out of a discriminatory animus or that Defendant applied the evaluations in a discriminatory fashion when it made the decision to lay off Plaintiff.

Plaintiff first argues that Defendant's proffered reason is not legitimate because Defendant failed to follow the layoff procedure set for in its Associates Handbook. Defendant's failure to comply with its own Associate Handbook may be objectionable and may even be a breach of contract under some circumstances, but it does not establish by a preponderance of the evidence that Defendant's reason for following a different procedure – one applied in the same manner throughout the company – was motivated by discriminatory animus against Plaintiff.

Second, Plaintiff argues that Decook did not take any action in response to Eaton's two comments. Stray remarks not related to the decision-making process are not evidence of unlawful discrimination. *Hopkins v. Electronic Data Systems Corp.*, 196 F.3d 655, 661 (6th Cir. 1999). The relevance of stray remarks is evaluated by asking whether the remarks were made by the decision-maker or an uninvolved employee, whether the remarks were part of a pattern of biased comments or were isolated, whether the remarks were made near the time of the decision, and whether the remarks were clearly indicative of discriminatory bias or were ambiguous. *Krohn v. Sedgwick James of Michigan, Inc.*, 244 Mich. App. 289, 292 (2001) (summarizing the holdings of the federal courts). Eaton's remarks were not made by the decision-maker; Eaton was not in any managerial position and did not evaluate Plaintiff. To the extent that Decook's silent smile at the ceiling when he overheard Eaton's July comment may be considered a remark, it occurred on one occasion five months prior to his evaluation of Plaintiff, making it remote in time. It is also rather ambiguous. Decook's silence upon overhearing Eaton's second remark is also ambiguous and removed by some months from the evaluation. Therefore, Eaton's comments and Decook's silences are stray remarks not related to the decision-making process. However

- 7 -

tasteless they may be, they are not evidence of a discriminatory motive in Decook's low scoring of Plaintiff or Defendant's resulting decision to lay off Plaintiff.

Third, Plaintiff argues that Defendant lacks particularized facts to support the choice of Plaintiff for layoff. Plaintiff argues that Pascu and Decook were not able to accurately evaluate Plaintiff because they worked separate shifts and therefore lacked supervisory contact. However, Plaintiff admits that Decook overlapped for one to two hours and Pascu for thirty to forty-five minutes each day; Plaintiff further admits that he occasionally took the first shift. In addition to this regular contact with Plaintiff, both Pascu and Decook relied on the observations of the second shift superintendent, Don Yaquinto. Employers are entitled to rely on the observations of their supervisors when conducting evaluations. *See Nizami v. Pfizer*, 107 F.Supp.2d 791, 804 (E.D. Mich. 2000). Furthermore, Plaintiff bears the burden of showing that Defendant's rationale is a pretext; merely saying that the Defendant has not provide particularized facts to prove the genuineness of their nondiscriminatory rationale will not suffice, as the Defendant does not have to prove anything at this stage. *Hartsel*, 87 F.3d at 800 ("It is important to note that the defendant need not *prove* a nondiscriminatory reason . . ., but need merely *articulate* a valid rationale.").

Fourth, Plaintiff argues that he was more qualified than Mathis because she continued to need training and seek his help. Whether or not this is the case, "the law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with." *Hartsel*, 87 F.3d at 795 (holding that conclusory statements regarding the parties' relative qualifications did not provide factual support for claims of discrimination). Furthermore, Defendant was seeking to retain employees with an attitude and work ethic that

- 8 -

would allow them to keep up with the greater quantity of work following the layoff; Zolli specifically designed the evaluation form to identify employees with the desired characteristics. Pascu and Decook felt Mathis had those qualities and Plaintiff did not, regardless of whether Plaintiff had more hard skills or technical knowledge. The drafting of an evaluation to be applied throughout all departments that does not showcase Plaintiff's strengths does not establish a discriminatory motive.

Fifth, Plaintiff argues that Decook unfairly favored Mathis over Plaintiff. After Plaintiff and Mathis refused to help each other, Mathis lodged a complaint with Decook. Decook did not listen to Plaintiff's side of the story and placed a record of the meeting in Plaintiff's file but not Mathis'. While Decook's actions may have been unfair, Plaintiff has not alleged any facts to suggest that Decook was motivated by a discriminatory animus. It is not sufficient that Plaintiff is a member of a protected class and Mathis is not; the Plaintiff must provide facts beyond those necessary to establish the prima facie elements of his claim. *Manzer*, 29 F.3d at 1084.

Finally, Plaintiff argues that he was isolated by Decook. On the occasion in question, Decook took each employee except Plaintiff for a walk around the building. Decook was questioning the employees about an incident of inappropriate behavior they had witnessed. Plaintiff did not witness the incident, and so Decook had no reason to speak with Plaintiff. These facts simply do not show by a preponderance of the evidence that Decook was discriminating against Plaintiff based on his national origin or religion.

Moreover, Plaintiff has not set forth any evidence suggesting that the other evaluator, Pascu, or the decisionmakers, Zoli, Katakis, and Schaefer, harbored any discriminatory animus

against Yemenis or Muslims. Accordingly, the court will grant summary judgment in favor of Defendant.

## **ORDER**

IT IS HEREBY ORDERED that Defendant's May 21, 2009 motion for summary judgment is GRANTED.

Date: August 26, 2009          s/John Corbett O'Meara
         United States District Judge

I hereby certify that a copy of this opinion and order was served upon counsel of record on this date, August 27, 2009, via the court's ECF system.

         s/William Barkholz
         Case Manager